# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-09-00673-CV

**Susan Combs, Successor to Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellants**

v.

**Home & Garden Party, Ltd., Appellee**

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. D-1-GN-06-001392, HONORABLE GUS J. STRAUSS JR., JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Home & Garden Party, Ltd. ("HGP") sued appellants Susan Combs, Successor to Carole Keeton Strayhorn, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas (collectively, "the Comptroller") seeking a refund of sales tax it had paid on wrapping and packaging supplies. The trial court granted HGP's motion for summary judgment and ordered the Comptroller to refund HGP $319,535.77 in taxes paid for the period of January 1, 1998 through July 31, 2001, and $472,098.72 in taxes paid for the period of August 1, 2001 through May 31, 2004. The Comptroller appeals, arguing that the trial court erred in ordering a sales-tax refund because HGP is not entitled to claim a refund under tax code section 151.318 (the manufacturing exemption). We will reverse the summary judgment and remand the cause for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

HGP is a Texas limited partnership engaged in the business of manufacturing home decorating products and making wholesale sales of home decorating products to independent retailers. It is undisputed that HGP fabricates some of these products itself, including framed prints and wood products such as shelves, sconces, and clocks. In addition, HGP purchases bulk-packaged items such as silk flowers, wire products, and figurines, some of which, according to HGP, it must "alter or assemble" before they can be shipped. HGP asserts that its "altering and assembly activities generally constitute painting items, attaching components and/or assembling parts." HGP also purchases items in bulk that do not need to be altered or assembled but that are still repackaged prior to shipping. According to HGP, its packaging operation is "an integrated operation," meaning that its "packaging of framed prints and wood products is not separate and distinct from the packaging of floral items, wire products and resin & figurine items. Nor is there any operational separation between the packaging for items that have been altered or assembled and those that have not." HGP treated most of its packaging materials and supplies as tax exempt under the manufacturing exemption in tax code section 151.318.

The Comptroller audited HGP for sales-tax compliance for the period of January 1, 1998 through July 1, 2001, and determined that only a portion of HGP's purchase of packaging materials and supplies was tax exempt.[1] Therefore, the Comptroller assessed tax liability in the amount of $319,535.77. This appeal also concerns the tax period of August 1, 2001 through

---

[1] The Comptroller determined that 44.6% of packaging materials that HGP purchased in tax years 1998 and 1999 qualified for the exemption, 20.5% were exempt for tax year 2000, and 26.3% were exempt for tax year 2001.

May 31, 2004, for which the Comptroller assessed an additional $472,098.72 in tax liability. HGP paid the assessed taxes under protest and filed suit to recover a refund.

HGP moved for summary judgment on the ground that all of its purchases of packaging materials were exempt under section 151.318(a)(1) of the tax code, which provides a sales-tax exemption for tangible personal property that will become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale. *See* Tex. Tax Code Ann. § 151.318(a)(1) (West 2008). In its response to HGP's motion, the Comptroller attached a spreadsheet that HGP had generated detailing the "re-work" and "prep" activities that HGP engaged in with respect to the items HGP purchased from other fabricators. This document reflects that, of the 2,895 individual items of that type that HGP sold, only a small fraction (about 50 items) required alteration or assembly by HGP other than boxing, packaging, labeling, or bubble wrapping—activities that, according to the Comptroller, do not constitute "manufacturing" and therefore did not qualify HGP's purchase of packaging materials for the manufacturing exemption. The trial court granted HGP's motion for summary judgment, and the Comptroller now appeals.

**STANDARDS OF REVIEW**

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, and

3

we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215.

Our review of the summary judgment here turns on construction of the tax code and the Comptroller's rules. Statutory construction presents a question of law that we review de novo. *See State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). Our primary objective in statutory construction is to give effect to the legislature's intent. *Id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). Statutory and rule provisions bearing on the same matters must be given a consistent and harmonious meaning. *Gulf States Utils. Co. v. Public Util. Comm'n*, 784 S.W.2d 519, 524 (Tex. App.—Austin 1990), *aff'd*, 809 S.W.2d 201 (Tex. 1991).

With regard to a statute that an agency is charged with enforcing, however, we give "serious consideration" to the agency's construction of it, so long as that construction is reasonable and consistent with the statutory language; this is particularly true when the statute involves complex subject matter within the agency's area of expertise. *See First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 632 (Tex. 2008). Further, statutory exemptions from taxation—like the manufacturing and processing exemption—are "strictly construed" because they "undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than

placing the burden on all taxpayers equally." *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). The burden of proof for showing that the exemption applies lies with the claimant. *See id.* An exemption must affirmatively appear in the statute, and all doubts are resolved in favor of the taxing authority. *See Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979); *7-Eleven, Inc. v. Combs*, 311 S.W.3d 676, 684 (Tex. App.—Austin 2010, pet. denied).

## DISCUSSION

To meet its burden of proving as a matter of law that it was entitled to a sales-tax refund, HGP relied on the manufacturing exemption found in section 151.318 of the tax code. Like other exemptions, the manufacturing exemption is an exception to the general rule that sales tax is imposed on the sale of any taxable item in the state. *See* Tex. Tax Code Ann. § 151.051(a) (West 2008). The manufacturing exemption exempts a person who produces certain types of tangible personal property for sale to ultimate consumers from having to pay sales tax on its purchase of certain otherwise-taxable tangible personal property that is used in the production process. *See Sharp v. Tyler Pipe Indus., Inc.*, 919 S.W.2d 157, 159, 161 (Tex. App.—Austin 1996, writ denied). Because such taxes would ordinarily be passed on in the product's sale price, which is paid by the ultimate consumer and on which sales tax is imposed, the manufacturing exemption serves to avoid "pyramiding the sales tax on successive buyers and sellers, which would result in the ultimate consumer paying sales tax on sales tax." *Id.* at 161; *see Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 168 (Tex. App.—Austin 1997, no pet.).

5

Section 151.318 provides, in pertinent part, that "tangible personal property that will become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale" is exempt from the taxes imposed by this chapter "if sold, leased, or rented to, or stored, used, or consumed by a manufacturer." Tex. Tax Code Ann. § 151.318(a)(1). Although the tax code itself does not define "manufacturer," the Comptroller's rules provide that a manufacturer is "[a] person who is engaged in manufacturing." 34 Tex. Admin. Code § 3.300(a)(8) (2009) (Tex. Comptroller of Pub. Accounts, State Sales & Use Tax—Manufacturing; Custom Manufacturing; Fabricating; Processing).[2] "[M]anufacturing," for purposes of tax code section 151.318, "includes each operation beginning with the first stage in the production of tangible personal property and ending with the completion of tangible personal property having the physical properties (including packaging, if any) that it has when transferred by the manufacturer to another." Tex. Tax Code Ann. § 151.318(d).

Relying on these provisions, HGP asserts that its purchase of packaging materials is exempt from sales tax because, as a person engaged in manufacturing, it is a "manufacturer," and the packaging materials become an ingredient or component part of the tangible personal property that it sells. HGP further maintains that it is a manufacturer not only with respect to the category of products that it fabricates, but also the products on which it performs only "the final manufacturing stage—packaging." In this regard, HGP argues that, under section 151.318(d), the act of packaging is a stage of or operation constituting "manufacturing," and thus it is "a manufacturer" of the silk

---

[2] The Comptroller amended rule 3.300 in 2001; however, the changes had no effect on the provisions relevant to this case. For convenience, we cite to the current version of the rule.

flowers, wire products, and figurines that it purchases in bulk from others, in addition to the framed prints and wood products that it actually fabricates.

The Comptroller, on the other hand, argues that HGP primarily repackages, rather than manufactures, most of the items that it sells, and that "repackaging" is *not* manufacturing for purposes of section 151.318 because it does not make or cause a physical change in the items themselves. Accordingly, the Comptroller asserts, only the framed prints and wood products that HGP fabricates and the few other items that HGP paints and/or assembles (or otherwise changes the physical characteristics of) are manufactured by HGP. The Comptroller's argument tracks rule 3.300, which provides that the definition of "manufacturer" includes "processors" and "fabricators," 34 Tex. Admin. Code § 3.300(a)(8), and defines these separate stages of "manufacturing" as follows:

> Processing--The physical application of the materials and labor necessary to modify or to change the characteristics of tangible personal property. The repair of tangible personal property, belonging to another, by restoring it to its original condition is not considered processing of that property. The *mere packing*, unpacking, or shelving of a product to be sold *will not be considered to be processing* of that property. . . .
>
> Fabrication--To make, build, create, produce, or assemble components of tangible personal property, or to make tangible personal property work in a new or different manner.

*Id.* § 3.300(a)(10), (5) (emphases added).[3] In other words, the Comptroller does not consider the act of "packaging"—without regard to *who* performs the packaging—to be a stage of manufacturing as a matter of law.

The Comptroller also bases its position on rule 3.314, which specifically addresses wrapping and packaging supplies. *See id.* § 3.314 (2009) (Tex. Comptroller of Pub. Accounts, State Sales & Use Tax—Wrapping, Packing, Packaging Supplies, Containers, Labels, Tags, Export Packers, & Stevedoring Materials & Supplies). Rule 3.314 provides, in relevant part:

> (b) Manufacturers.
>
> > (1) Sales or use tax is not due on containers or packaging supplies purchased by manufacturers for use as a part of the completion of the manufacturing process. For the purposes of this section, the manufacturing process is complete when the tangible personal property being produced has been packaged by the manufacturer as it will be sold. . . .
>
> . . . .
>
> (c) Sale of packaging supplies to persons other than manufacturers. Sales or use tax is due on the sale of packaging supplies, including gift wrapping supplies, to persons who repack tangible personal property prior to sale, produce shippers who are not original producers, wholesalers, retailers, and service providers other than laundry and dry cleaners for use in delivering, expediting, or furthering in any way:
>
> > (1) the performance of a taxable or nontaxable service;
> >
> > (2) the rental of tangible personal property; or
> >
> > (3) the sale of tangible personal property.

---

[3] Rule 3.300(a) also defines "manufacturer" to include "submanufacturers" and "custom manufacturers," but these definitions are not relevant to our analysis. *See* 34 Tex. Admin. Code § 3.300(a) (2009) (Tex. Comptroller of Pub. Accounts, State Sales & Use Tax—Manufacturing; Custom Manufacturing; Fabricating; Processing).

. . . .

> (e) Combination businesses. A business that primarily manufactures tangible personal property for sale may also purchase tangible personal property for resale that was manufactured by another entity. If the business is primarily a manufacturer, all packaging supplies may be purchased tax free even though a portion of the packaging supplies are used in repackaging a product.

*Id.* § 3.314(b), (c), (e).[4] In the Comptroller's view, HGP does not manufacture any of the "pre-finished" items that it purchases from other manufacturers because those items are "complete" with respect to their physical properties, including packaging, when they are transferred to HGP from their initial manufacturer. In other words, the manufacturing process is complete as to these items because they are already packaged by the initial manufacturers in the form in which they are sold to HGP. Instead of manufacturing these items, HGP merely repackages them, *see id.* § 3.314(c), and the undisputed summary-judgment evidence shows that although HGP does *some* manufacturing, it is not "primarily" engaged in manufacturing, *see id.* § 3.314(e). Accordingly, sales tax is due.

The Comptroller's interpretation of the governing statutory scheme acknowledges that section 151.318's definition of "manufacturing" does, in some cases, include packaging as a stage in the manufacturing process. It also suggests, however, that there is a clear end point in the manufacturing continuum once an item has the physical properties, including packaging, that it possesses when it is transferred from "the manufacturer" of the item to another. *See* Tex. Tax Code Ann. § 151.318(d). "*The* manufacturer," in this scenario, describes the fabricator or processor of the item; any packaging materials that the fabricator or processor includes with the item in transferring

---

[4] In its appellate brief, HGP asserts that, if subsections (c) and (e) of rule 3.3.14 apply here, they are inconsistent with tax code section 151.318(d) and should be struck down as ultra vires.

it to another—here, to HGP—would be exempt from sales tax.[5] Likewise, any packaging that HGP performs would also be part of the manufacturing continuum if, in addition to packaging, HGP changes the physical properties of the items in some way. But, the Comptroller asserts, the manufacturing process is complete as to any item whose physical properties are unchanged before they are transferred, as when HGP receives "prefinished" items that it does not alter or assemble, and therefore any packaging that is performed on those items would not constitute "manufacturing"; for purposes of the exemption, HGP would not be considered a "manufacturer" of such items.

We conclude that the Comptroller's interpretation of the sales-tax exemption in section 151.318(a)(1), which we must strictly construe in favor of taxation, is reasonable and consistent with the overall statutory scheme. Therefore, it is entitled to deference by this Court. *See First Am. Title Ins. Co.*, 258 S.W.3d at 632 (we give "serious consideration" to agency's construction of statute, so long as that construction is reasonable and consistent with statutory language). Further, the Comptroller's distinction in rule 3.314 between manufacturers who package items for transfer and wholesalers who repackage them for sale is not contrary to any provision in the tax code and therefore is not, as HGP asserts, invalid. *See DuPont Photomasks, Inc. v. Strayhorn*, 219 S.W.3d 414, 419 (Tex. App.—Austin 2006, pet. denied) ("In determining whether a rule is valid, we are limited to ascertaining whether the rule is contrary to the relevant statute."). Considering the

---

[5] The Comptroller also acknowledged during oral argument that an initial manufacturer could subcontract its packaging operations to another person, who would be a manufacturer for purposes of section 151.318 and whose purchase of packaging supplies would be exempt from sales tax, but emphasized that there is no evidence in this record to support such a subcontractual relationship between HGP and the fabricators and/or processors of the "prefinished" items at issue here.

10

Comptroller's construction and the requirement that tax exemptions be strictly construed against the taxpayer and in favor of the taxing authority, we hold that the manufacturing exemption does not apply to HGP's purchase of materials used to package items that HGP neither fabricated or processed nor altered or assembled the physical characteristics thereof. Accordingly, we hold that the trial court erred in granting HGP's motion for summary judgment and sustain the Comptroller's issue on appeal.

## CONCLUSION

We reverse the trial court's summary judgment and remand the cause to the trial court for further proceedings.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Reversed and Remanded

Filed: November 3, 2010

11